MELINDA HAAG (CSBN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Acting Criminal Chief

RICHARD C. CHENG (CSBN 135992)
Assistant United States Attorney

  150 Almaden Boulevard, 9th Floor
  San Jose, California 95113
  Telephone: (408) 535-5032
  FAX: (408) 535-5032
  e-mail: richard.cheng@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

(Judge James Ware)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>DAVID FOLEY,<br><br>  Defendant. | No. CR 09-00670-JW/HRL<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR JENCKS ACT MATERIAL PRIOR TO TESTIMONY OF WITNESS AT TRIAL<br><br>Date: December 16, 2010<br>Time: 1:30 p.m<br>Court: Magistrate Howard R. Lloyd |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Melinda Haag , United States Attorney, and Richard C. Cheng, Assistant United States Attorney, and hereby files its response to defendant's motions for discovery.

## I

## **STATEMENT OF FACTS**

The Government refers this Court to and incorporates by reference the Statement of Facts previously filed by the Government in response to the Defendant's prior motion to compel

discovery.

## II

## STATEMENT OF THE CASE

Foley and his co-defendant Daddona were indicted on July 1, 2009 for conspiracy to commit mail and wire fraud, trafficking in counterfeit goods, trafficking in stolen goods, theft of trade secrets, substantive counts of mail and wire fraud, conspiracy to commit money laundering, and substantive counts of money laundering to conceal illegal activity, and money laundering transactions in property derived from specified unlawful activity.

Foley made his initial appearance before Magistrate Trumbull on July 8, 2009 and was subsequently released on a $100,000 personal appearance bond secured by the defendant's own signature on that same date. On July 27, Magistrate Trumbull issued an order appointing the Federal Public Defender to represent Foley. AFPD Lara Vinnard, later assisted by Supervisory AFPD Nicholas Humy was assigned to represent defendant Foley. Since that time, the Government provided over five thousand pages of discovery to defense counsel. Over the course of nearly a year, defendant Foley engaged in ten continued status conferences and formally requested continuances of at least four appearances before the District Court. No motions were ever filed by defendant Foley during this year of reviewing discovery.

On June 10, 2010, Magistrate Trumbull allowed private counsel, Samuel Shepard by substituted in, indicating specifically that he was taking the case pro bono. Current counsel has confirmed receipt of the complete discovery from the Federal Public Defender as well as the information derived from the year long investigation done by that office.

The defendant now brings a motion for discovery of Jencks Act material prior to the testimony of witnesses at trial. The following response by the government supplements the prior response to discovery requests filed by the defendant. Specifically, without agreement or discussion as to the merits of the argument put forth by the defendant as the basis for requiring disclosure of Jencks Act materials, the Government will provide Jencks Act materials of person(s) that will likely be called to testify in the prosecution's case-in-chief prior to trial and convey the documents) to current counsel prior to the hearing date of this motion.

# III

# POINTS AND AUTHORITIES

A. <u>DEFENDANT'S MOTION TO COMPEL DISCOVERY</u>

    1. <u>Discovery Regarding Government Witnesses</u>

Defendant requests certain discovery regarding Government witnesses. The Ninth Circuit discussed the proper scope of discovery regarding prospective Government witnesses in <u>United States v. Jones</u>, 612 F.2d 453 (9th Cir. 1979), <u>cert. denied</u>, 445 U.S. 966 (1980), stating:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Federal Rules of Criminal Procedure 16(a)(2) and (a)(3) exclude both "statements made by government witnesses or prospective government witnesses, except as provided in 18 U.S.C. § 3500 [Jencks Act]" and grand jury transcripts from the category of evidence the defense is entitled to discover before trial. This limitation has also been extended to prohibit the pretrial disclosure of the identity of government witnesses in the absence of a showing of reasonable necessity by the defense.

<u>Id</u>. at 454-455.

The Government therefore is not required to provide defendant with a list of the names and addresses of the witnesses it expects to call at trial. <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir.), <u>cert. denied</u>, 419 U.S. 834 (1974); <u>United States v. Glass</u>, 421 F.2d 832, 833 (9th Cir. 1969). In addition, agreements with witnesses need not be turned over prior to the testimony of the witness. <u>United State v. Rinn</u>, 586 F.2d 113, 119 (9th Cir. 1978), <u>cert. denied</u>, 441 U.S. 931 (1979). Similarly, there is no obligation to turn over the criminal records of all witnesses. <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976), <u>cert. denied</u>, 429 U.S. 1074 (1977).

The production of witness statements is governed by the Jencks Act (Title 18, United States Code, Section 3500) and need occur only after the witness testifies on direct examination. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th Cir. 1986), <u>cert.denied</u>, 479 U.S. 1094 (1987); <u>United States v. Mills</u>, 641 F.2d 785, 790 (9th Cir.), <u>cert denied</u>, 454 U.S. 902 (1981). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the <u>Brady</u>

doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623 F.2d 551, 556-57 (9th Cir. 1979).

To the extent the grand jury transcripts sought by defendant consist of statements of Government witnesses, otherwise subject to the Jencks Act (18 U.S.C. § 3500), disclosure may not be required except under the terms of that Act. Thus, pretrial discovery of such transcripts must be denied, and the only access available to defendant is after the witness has been called by the United States and has testified on direct examination.

In United States v. Daras, 462 F.2d 1361 (9th Cir.), cert. denied, 409 U.S. 1046 (1972), defendants were convicted of possession of cocaine with intent to distribute. On appeal, they assailed the failure of the district court to allow them access to the grand jury testimony. In a per curiam opinion, the Ninth Circuit summarily disposed of that contention, stating:

> It was not error to refuse the appellants access to the grand jury transcript. . . . The transcript, as to witnesses other than the defendants, is covered by the Jencks Act, 18 U.S.C. § 3500, and it is not available until the grand jury witness has completed his trial testimony. Here, the grand jury witness was not one called or to be called at trial.

462 F.2d at 1362. The same view was expressed in United States v. Hearst, 412 F.Supp. 863, 869 (N.D. Cal. 1975), as well as in a number of other decisions at the appellate level. See, e.g., United States v. Campagnuolo, 592 F.2d 852, 858-61 (5th Cir. 1979); United States v. Tager, 481 F.2d 97, 100 (10th Cir. 1973), cert. denied, 415 U.S. 914 (1974); United States v. Quintana, 457 F.2d 874, 878 (10th Cir.), cert. denied, 409 U.S. 877 (1972).

The conclusion that the Jencks Act is controlling with respect to disclosure of Government witnesses' testimony before the grand jury is consistent with the purposes and scope of Rule 6(e) of the Federal Rules of Criminal Procedure. In Fund for Constitutional Government v. National Archives & Records Service, 656 F.2d 856, 868 (D.C. Cir. 1981), the court stated that the "legislative history and cases construing [Rule 6(e)] indicate that it was intended to preserve the traditional rule of grand jury secrecy with certain limited exceptions." Further, the court in United States v. Weinstein, 511 F.2d 622, 627 (2d Cir.), cert. denied, 422 U.S. 1042 (1975), stated that the Rule "was not designed as an authorization for pretrial discovery." Accordingly,

1  the exception in Rule 6(e)(3)(C) allowing disclosure of grand jury matters on court order "in
2  connection with a judicial proceeding" must give way to the Jencks Act unless the defendant can
3  show "a particularized need" that outweighs the policy of grand jury secrecy. United States v.
4  Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th
5  Cir.), cert denied, 474 U.S. 979 (1985). The Government need not make a showing of a possible
6  threat to the lives of the grand jury witnesses in order to maintain the need for secrecy. United
7  States v. Wellington, 754 F.2d 1457, 1469 (9th Cir.), cert. denied, 474 U.S. 1032 (1985).
8      Furthermore, even if the examination of the transcript reveals Brady material, the transcript
9  is still not discoverable prior to trial. When the defense seeks material that is both Jencks Act
10  and Brady material, the Jencks Act controls. United State v. Jones, 612 F.2d 453, 455 (9th Cir.
11  1979), cert. denied, 445 U.S. 966 (1980).
12      Here, the defendant has offered no "particularized need" to justify disclosure of the grand
13  jury transcript before the testimony of a grand jury witness at trial other than generally referring
14  to the transcript as possible impeachment material. Defendant's motion should be denied on the
15  basis argued by the Defendant..
16      Despite the above, and in the interests of an orderly conduct of the impending jury trial, the
17  Government will release the Jencks material of witness(es) it anticipates will testify in the
18  prosecution's case-in-chief.
19      The Government reserves the right to withhold the statements of any particular witnesses it
20  deems necessary until after they testify. Otherwise, the Government will disclose the statements
21  of witnesses prior to the currently scheduled motion hearing, provided that defense counsel has
22  complied with their obligations under Federal Rules of Criminal Procedure 12.1, 12.2, 16 and
23  16.2, and provided that defense counsel will turn over all "reverse Jencks" statements at that
24  time. Additionally, the Government will disclose the terms of any agreements by Government
25  agents, employees or attorneys with witnesses that testify at trial. Such information will be
26  provided five days prior to trial.
27  //
28  //

//

## B. THE GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY SHOULD BE GRANTED

### 1. Rule 16(b)

The defendant has invoked Federal Rule of Criminal Procedure 16(a) in his motion for discovery. In addition, the Government voluntarily will comply with the requirements of Federal Rule of Criminal Procedure 16(a). Thus, the 16(b) provision of that rule are operable as to defendant.

The Government, pursuant to Rule 16(b), hereby requests the defendant to permit the Government to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of defendant and which he intends to introduce as evidence in his case in chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of the defendant, which he intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call as a witness. The Government also requests that the Court make such orders as it deems necessary under Rule 16(d)(1) and (2) to ensure that the Government receives the discovery to which it is entitled.

### 2. Rule 26.2

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses except the defendant. The Rule thus provides for the reciprocal production of Jencks statements. As stated in pertinent part:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney . . . to produce, for the examination and use of the moving party, any statement of the witness that is in their possession . . . .

Fed. R. Crim. P. 26.2(a).

The time frame established by the Rule requires the statement to be provided after the

1 witness has testified, as in the Jencks Act. Therefore, the Government hereby requests that
2 defendant be ordered to supply all prior statements of defense witnesses by a reasonable date
3 before trial to be set by the court. This order should include any form these statements are
4 memorialized in including, but not limited to, tape recordings, handwritten or typed notes and
5 reports

### C. MATERIALS AND INFORMATION NOT CONVEYED TO NEW COUNSEL.

#### 1. Current Counsel Either Ignores or Has Not Been Informed That Twenty-Eight Hard Drives Have Previously Been Returned Direct To The Defendant On June 17, 2008

The Defendant has previously filed with this Court a serious of property receipts showing the return of physical items to the Defendant or his counsel, in an attempt to argue that the rest of the items seized from the Defendant's residence in Los Gatos have somehow been insidiously hidden away from the Defendant. Most curiously, without any explanation, the Defendant's papers repeatedly refer to the hidden materials and "exculpatory evidence."

Nothing has been hidden away form the Defendant. In the mass of receipts filed with this Court, current counsel for the Defendant either does not know, or completely ignores the fact that twenty-eight (28) separate hard drives seized from the Defendant's residence during the execution of a search warrant were previously returned to and personally retrieved from the FBI by the Defendant himself on June 17, 2008. A copy of the Receipt for Property Returned, singed by the Defendant himself accompanies this response as Attachment A.

#### 2.. Materials Previously Made Available to Defendant's Prior Counsel

Despite current counsel's repeated confirmation that all discovery previously provided to the Assistant Federal Defenders who previously represented the Defendant, have been transferred to him, it is apparent that current counsel is either mis-informed or unaware as to the breadth of the materials previously accessed and reviewed by the Defendant's prior legal representatives and the inordinate amount of time and analysis the Defendant's prior legal team devoted in doing so.

On April 21, 2010 and again on May 18, 2010, Assistant Federal Public Defenders Nick Humy, Lara Vinnard, along with defense experts and investigators, Daniel Crim and Douglas Cole, reviewed all remaining evidence which were not returned to the Defendant because they

were either evidence of, or an instrumentality of the crimes charged.  Review of non-electronic documentary evidence took place first at the FBI Offices in Campbell, California.  Review of the electronic data contained in the hard drives not returned to the Defendant were done by the Defendant's attorneys and investigators using computers at the District's Regional Computer Forensic Laboratory (RCFL).  Physical and electronic items marked by the defense attorneys for printing and copying, were subsequently discovered in hard copy form to the Defendant later that week.

Moreover and despite current counsel's complaint to the contrary, the defense team also previously examined all items obtained by the FBI from Micro Forensics.  By way of background, the Government was informed that those items were previously placed in the custody of the Micro Forensics for forensic examination by stipulation of the Defendant and GlobalVR as part of their civil suit. The Government obtained the materials from Micro Forensic *after* relaying to the Defendant's attorneys by telephone, e-mail and again in District Court that the evidence existed and would be lost or erased unless one of the parties to the criminal case chose to retrieve the materials.  Only after the Defendant filed to retrieve the materials and further refused to pay the stipulated amount to Micro Forensics for its prior work on the civil suit--suggesting instead that Micro Forensics should merely erase all the electronic data and keep the hard drives as adequate compensation, did the Government obtain the materials as evidence. This background plainly shows not only did the Government repeatedly inform the Defendant that the materials existed, but also suggested that they should retrieve it themselves.  Only when the Defendant chose not to do so, did the Government seek to and did obtain and preserve the evidence.  Further, far from hiding this material, the Government has previously made the materials from Micro Forensics available for full review by the defense team.  Defendant's counsel specifically examined the material retrieved from Micro Forensics earlier this year.

To aid this Court and current defense counsel's understanding of the magnitude of the review and analysis already completed by the Federal Public Defender's Office on behalf of the Defendant, Attachment B to this response, is the computer generated inventory of all physical evidence seized in the instant investigation.  This eleven page inventory designates the

Government's To Defendant's Motion for Jencks Material Prior To Trial

8

"1B"numbers assigned to specific groups of physical evidence; the FBI location where the evidence is stored; the date the evidence was acquired; and a description of the physical evidence. Two copies of this inventory (one clean copy and one copy with hand written notes of AFPD Vinnard and the FPD investigator) were provided earlier this year at their request.

In sum and contrary to current counsel's complaint, all items seized from the Defendant's residence which have not already been returned to the Defendant, were examined and reviewed by the Defendant's then attorneys and investigators. The items reviewed and examined by the defense team specifically included items1B25, 1B30, 1B40; 1B40, 1B44; 1B47; 1B52; 1B53; 1B56; 1B60; 1B61; 1B79; 1B88; 1B89; 1B90; 1B91; 1B92; 1B93 and 1B94 as designated in Attachment B.

Beyond those items seized from the Defendant's residence, the defense team previously requested and reviewed certain computer game packs as charged in the Indictment including items 1B12; 1B13; 1B10; 1B9 and 1B9.

The Government has given full access and accounting of all evidence seized and returned to the Defendant. Allegations to the contrary should not be countenanced by this Court.

## IV

## **CONCLUSION**

Defendant's motions should be denied, except where unopposed, and the Government's motion for reciprocal discovery should be granted.

DATED:      December 9, 2010.

                                            Respectfully submitted,

                                            MELINDA HAAG
                                            United States Attorney

                                            RICHARD C. CHENG
                                            Assistant United States Attorney

Case5:09-cr-00670-JW Document78 Filed12/10/10 Page10 of 10